ANGÉLICA OYOLA SOLÍS, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN SÉPTIMA, recurrido.

*Número:* O-79-37      *Resuelto:* 6 de mayo de 1980

*Federico A. Cordero,* abogado de la recurrente; la Registradora recurrida compareció por escrito.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

La Ley Núm. 1 de 11 de julio de 1972, 28 L.P.R.A. sec. 711 y ss., es una ley de fines sociales. Contiene una exposición de motivos a esos efectos. Considera el problema de los campesinos "agregados" y dispone para la donación de parcelas a personas y familias que no tuviesen hogar propio. Asigna $15 millones para la adquisición de terrenos y para el desarrollo de un plan de Comunidades Rurales. Como tal, la misma debe interpretarse teleológicamente, esto es, atendiendo a sus fines.

    Tratándose también de una ley especial para unos fines determinados la misma debe prevalecer sobre las normas generales supletorias, siempre que sea legítimo su objetivo y siempre que no se haga violencia injustificada a los grandes parámetros de nuestro ordenamiento jurídico.

En 20 de abril de 1977, mediante Escritura de Segrega-

ción y Traspaso, el Estado Libre Asociado de Puerto Rico, representado por el Secretario de la Vivienda, denominado "el Cedente", cedió y traspasó a favor de "el Cesionario" un solar rústico sito en el término municipal de Río Grande, con una cabida de 560 metros cuadrados. Se expresa en la escritura que el traspaso se efectúa a tenor con lo dispuesto en la citada Ley Núm. 1 de 11 de julio de 1972.

Dispone la escritura que "la persona cuyo nombre y circunstancias personales se consignan en el párrafo Segundo de esta escritura" es "el Cesionario". En dicho párrafo segundo se describe al cesionario de la siguiente forma: "Doña Angélica Oyola Solís, mayor de edad, casada con Don Félix Nazario Morales, propietaria y vecina de Río Grande, Puerto Rico." Esa es toda la descripción que se hace de "el Cesionario".

De la nota manuscrita del Registrador que aparece al dorso de la última página de dicha escritura surge que la misma fue inscrita al folio 277 del tomo 187 de Río Grande, libre de cargos. Nada dice, desde luego, dicha nota sobre a favor de quién se hizo la inscripción. Sin embargo, de los autos surge que la parcela fue inscrita a favor de la sociedad legal de gananciales compuesta por Angélica Oyola Solís y Félix Nazario Morales, sin que en el documento presentado hubiese comparecido Félix Nazario Morales.

Posteriormente se presentó al Registro la escritura objeto del presente recurso, mediante la cual Angélica Oyola Solís vende dicha parcela a Carmen Lydia Valentín. La ilustrada Registradora recurrida denegó su inscripción basándose en que la parcela constaba inscrita a favor de la sociedad legal de gananciales antes mencionada, sin que en la escritura de compraventa presentada compareciese Félix Nazario Morales.

La controversia gira en torno a si la parcela en cuestión es un bien privativo de Angélica Oyola Solís o, si por el contrario, pertenecía a la sociedad legal de gananciales compuesta por Angélica y su esposo.

Normalmente, desde luego, el bien sería considerado como perteneciente a la sociedad legal de gananciales. ([1]) Sin embargo, militan en contra de esa conclusión las siguientes circunstancias. Cuando el Secretario de la Vivienda, traspasó, a tenor con lo dispuesto en la citada Ley Núm. 1 de 11 de julio de 1972, la parcela al "Cesionario", el cesionario, como vimos, era Angélica Oyola Solís, quien aunque casada con Félix Nazario Morales estaba separada de su esposo desde septiembre de 1975. Fue ella una de las víctimas de las inundaciones causadas por el huracán Eloísa en aquel año. Estuvo asilada en un refugio público e hizo solicitud de solar ante la Administración de Programas Sociales, antecesora de la Administración de Vivienda Rural. Su nombre fue incluido en el sorteo correspondiente, como resultado del cual le tocó la parcela.

La solicitud informaba que vivía separada de su esposo; que era jefe de una unidad familiar que incluía a su hijo de un año de edad y a su hijita de tres meses. Su esposo no aparece solicitando la parcela.

■ Dispone la citada Ley Núm. 1 que serán elegibles para recibir gratuitamente los solares, entre otros, los solicitantes de áreas susceptibles a inundaciones y que sean personas de escasos recursos económicos. La ley define a persona de escasos recursos económicos como un jefe de familia cuyo ingreso no exceda de $5,500 al año. 28 L.P.R.A. sec. 719(a). La ley no distingue ni determina si ese jefe de familia debe ser necesariamente varón o mujer.

■ Entendemos que debido al propósito social de la ley poco importa el sexo para determinar si el cesionario o cesionaria cualifica como jefe de familia. A la luz de la letra de la ley y de su espíritu lo determinante es que fuese persona de escasos recursos económicos y que cumpla con ciertos requisitos—más que requisitos son desventuras—que hagan acreedor a esa persona a la ayuda social que la ley se propone dar.

---

([1]) Véase *Silva Ramos* v. *Registrador*, 107 D.P.R. 240 (1978).

■ La propia ley al establecer los requisitos para ser elegible para recibir gratuitamente los solares expresa que tendrán prioridad, entre otros, "mujeres que sean jefes de familia y estén desempleadas". Aunque Angélica Oyola Solís estaba casada al recibir el solar debemos entender que era un jefe de familia. Vivía separada de su esposo y tenía a su cargo sus dos hijos menores y estaba dentro de las circunstancias económicas que la ley contempla. El término jefe de familia aquí utilizado se refiere única y exclusivamente a los propósitos especiales y específicos de la citada Ley Núm. 1 de 11 de julio de 1972 y no pretende, dicho término, enmendar o variar los conceptos generales del Derecho Civil sobre esa materia.

Como puede verse, este caso es un ejemplo vivo de la eterna paradoja con la cual ha vivido y tiene que vivir el Derecho. Esto es, que el Derecho deber ser estable pero no estático. Debe dar sensación de certeza y seguridad pero sus propios fines y su propia vida le exige ser dinámico. Como señalamos antes, su dinamismo y desarrollo debe mantenerse dentro de unos límites de prudencia y de rigor científico. No se trata, desde luego, de una carta blanca para incurrir en transgresión de la ley pero, como los extremos son viciosos, tampoco podemos limitarnos por un formalismo excesivo. Las tendencias teleológicas y vitalistas iniciadas por Rodolfo Von Ihering son hoy patrimonio del Derecho universal.

Castán, al ocuparse del asunto, señala que el Derecho tiene, a un mismo tiempo, dos exigencias difíciles de armonizar: de un lado, requiere seguridad y certeza, y de otro, movilidad y posibilidades de adaptación a la realidad cambiante. Castán, *Teoría de la Aplicación e Investigación del Derecho* (1947), pág. 356. Véanse, además, *Buena Vista Dairy, Inc.* v. *J.R.T.*, 94 D.P.R. 624, 632–633 (1967); Pound, *Law Finding Through Experience & Reason* (1960), pág. 23; y Friedmann, *Legal Theory*, 5ta ed. (1967), pág. 86, (en la 4ta ed., pág. 32).

*Por las consideraciones anteriores se revocará la nota recurrida y se ordenará la inscripción de la Escritura Núm. 1*

*de 18 de febrero de 1978 otorgada por Doña Angélica Oyola Solís y Doña Carmen Lydia Luna Valentín ante el notario Don Federico A. Cordero.*

El Juez Presidente Señor Trías Monge no intervino.